IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH J. MULHOLLAND, JR.,<br><br>Plaintiff,<br><br>v.<br><br>PHILADELPHIA SCHOOL DISTRICT, et al.,<br><br>Defendants. | CIVIL ACTION<br>NO. 25-2171 |

## OPINION

**Slomsky, J.**                                                              **August 20, 2025**

### TABLE OF CONTENTS

I.      **INTRODUCTION**................................................................................................. 3

I.      **BACKGROUND** ................................................................................................. 3

  A.   Factual Background ............................................................................................ 3

  B.   Procedural Background........................................................................................ 4

II.     **STANDARD OF REVIEW**............................................................................... 5

III.    **ANALYSIS**........................................................................................................ 7

  A.   Ethan Allen School is Improperly Named as Defendant ................................... 7

  B.   Plaintiff Has Failed to Sufficiently State a Claim Under § 1983 ....................... 7

    1.   Plaintiff's § 1983 Claim is Not Time Barred ................................................. 8

    2.   Plaintiff's § 1983 Claim Fails Under the "State-Created Danger" Exception.............. 10

    3.   Plaintiff's § 1983 Claim Fails Under All <u>Monell</u> Theories of Liability....................... 15

      a.   Plaintiff Fails to Establish the First Element of <u>Monell</u> ........................... 17

      b.   Plaintiff Fails to Establish that a Municipal Policy Caused the Alleged Violation of His Constitutional Right ........................................ 17

c.   Plaintiff Fails to Establish a Custom Creating <u>Monell</u> Liability Under § 1983 ................................................................ 19

d.   Plaintiff Fails to Identify a Policymaker ................................. 21

e.   Plaintiff Fails to Allege the School District Was Deliberately Indifferent ............... 22

f.   Plaintiff Fails to Plead a Claim Alleging Liability Under the Single Violation Theory ........................................................ 24

C.   School District is Entitled to Immunity Against Plaintiff's Negligence and Gross Negligence and/or Recklessness Claims ........................................................... 25

1.   Real Property Exception Does Not Apply ................................... 26

2.   Willful Misconduct Exception Does Not Apply ............................. 27

D.   Plaintiff's Request for Leave to Amend the Second Amended Complaint Will Be Denied ........................................................... 29

1.   Amendment of Plaintiff's § 1983 Claim (Count One) Would be Futile ...................... 30

2.   Amendment of Plaintiff's Negligence and Gross Negligence and/or Recklessness Claims Would Be Futile ........................................ 31

IV.  **CONCLUSION** .................................................................. 32

## I.  INTRODUCTION

This matter arises from an incident in which Plaintiff Joseph Mulholland ("Plaintiff"), a teacher at the Ethan Allen School in Philadelphia, Pennsylvania, was allegedly assaulted by a group of students at the school.  Rather than bringing this suit against his alleged attackers, Plaintiff filed a Second Amended Complaint ("SAC") against the Philadelphia School District (the "School District") and the Ethan Allen School (collectively, "Defendants").  (See Doc. No. 1.)  He seeks to impose liability on Defendants under two theories through 42 U.S.C. §1983:  (1) the state-created danger theory of liability, and (2) municipal liability under Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978).  (Id.)  Additionally, Plaintiff asserts two Pennsylvania tort claims for (1) negligence, and (2) gross negligence and/or recklessness.  (Id.)  In response, Defendants filed a Motion to Dismiss the SAC, submitting that Plaintiff has failed to plausibly allege either theory of liability under § 1983 and that Defendants have statutory immunity from the state tort claims.  (See Doc. No. 4.)  For reasons that follow, Defendants' Motion to Dismiss the SAC (Doc. No. 4) will be granted.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff Joseph Mulholland is a teacher at the Ethan Allen School, an educational institution that is part of the Philadelphia School District.  (Doc. No. 1 at ¶ 3.)  On February 1, 2023, Plaintiff alleges that he was attacked and/or assaulted by students at the Ethan Allen School inside of a bathroom located in a newly constructed annex of the school.  (Id. at ¶¶ 4, 6.)  He claims that the annex "was a known safety concern to the principal, administration, teachers, and/or staff, but the Defendants nevertheless provided no safety measures where the [attack] took place."  (Id. at ¶ 6.)

Plaintiff claims to have suffered serious and permanent personal injuries from the attack, including injuries to his:

> knees, legs, tendons, ligaments, soft tissue (resulting in multiple surgeries), concussion and/or traumatic brain injuries, neck and/or back spinal injuries, contusions to the face, back, arms and hands, and ancillary soft tissue injuries, as well as mental anguish, PTSD, post-concussion syndrome and/or mental distress.

(Id. at ¶ 13.)  Plaintiff asserts that the students attacked him because of their personal animosity towards him.  (Id. at ¶ 7.)  Specifically, Plaintiff believes that the students attacked him because of his Caucasian race, male gender, and animosity stemming from previous altercations and interactions with the students in question.  (Id.)

### B.      Procedural Background

On January 20, 2025, Plaintiff filed a Complaint against Defendants in the Philadelphia Court of Common Pleas, seeking damages for the serious and permanent injurious alleged to have been caused by the negligence and gross negligence and/or recklessness of Defendants.  (Doc. No. 5 at 2.)  On April 25, 2025, Plaintiff filed a Second Amended Complaint ("SAC"), adding a claim under 42 U.S.C. § 1983 ("§ 1983" or "Section 1983").  Plaintiff's § 1983 claim is proceeding under both the "state-created danger" and municipal liability theories.  (Doc. No. 4 at 6; Doc. No. 3 at 2.)  On April 30, 2025, Defendants removed the case to the United States District Court for the Eastern District of Pennsylvania.  (Doc. No. 3 at 2.)

On May 15, 2025, Defendants filed a Motion to Dismiss the SAC.  (Doc. No. 4.)  In the Motion, Defendants seek dismissal of Plaintiff's Section 1983 claim (Count One) for failure to raise the claim within the statute of limitations period, and for failure to adequately plead the claim. (Id.)  Defendants further move to dismiss the negligence (Count Two) and gross negligence and/or recklessness (Count Three) claims, arguing that immunity under the Pennsylvania Political Subdivision Tort Claims Act (the "Tort Claims Act") attaches here.  (Id.)

On May 21, 2025, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss.  (Doc. No. 5.)  In the Response, Plaintiff argues that the Section 1983 claim is not barred by the statute of limitations because the pleadings "relate back" to the original filing of the claim under Federal Rule of Civil Procedure 15(c), and the Section 1983 claim is legally sufficient to avoid dismissal.  (Id. at 4-5.)  Plaintiff further contends that the negligence and gross negligence and/or recklessness claims should not be dismissed because they fall under the real property and the willful misconduct exceptions to immunity under the Tort Claims Act.  (Id. at 10-11.)

On May 28, 2025, Defendants filed a Reply in Support of their Motion to Dismiss.  (Doc. No. 6.)  In the Reply, Defendants counter that the Section 1983 claim does not relate back since it does not arise from the same facts pled in the original filing, and that the claim is nonetheless insufficient as a matter of law.  (Doc. No. 6 at 1-2.)  Defendants further contend that they are immune under the Tort Claims Act because the real estate and willful misconduct exceptions under the Tort Claims Act do not apply here.  (Id. at 5-6.)  On July 14, 2025, the Court held a hearing on the Motion to Dismiss.  Defendants' Motion to Dismiss (Doc. No. 4) is now ripe for disposition.

## II.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

629 F.3d 121, 130 (3d Cir. 2010) (alteration in original) (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

III.     **ANALYSIS**

A.     **Ethan Allen School is Improperly Named as Defendant**

As an initial matter, the Ethan Allen School is improperly named as Defendant and will be dismissed.  Individual schools are not entities that can be sued.  See Estate of Massey v. City of Phila., 118 F. Supp. 3d 679, 699 (E.D. Pa. 2015) ("Defendant Bryant Academy argues that the claims against it should be dismissed since it is not a legal entity separate from the [Philadelphia] School District. This Court agrees."); Hamilton v. Hite, No. 16-5602, 2017 WL 3675398, at *5 (E.D. Pa. Aug. 21, 2017) (granting summary judgment as to the Webster Elementary and Stearne Elementary defendants because "individual schools (as opposed to the [Philadelphia] School District) are not entities that can be sued").

Accordingly, the Ethan Allen School will be dismissed as Defendant, leaving the Philadelphia School District (the "School District") as the only remaining Defendant in this case. As such, the Court's discussion on the merits of the Motion to Dismiss the SAC (Doc. No. 4) will be limited to whether Plaintiff states viable claims against the School District.

B.     **Plaintiff Has Failed to Sufficiently State a Claim Under § 1983**

While the § 1983 claim is timely, the SAC fails to establish that the School District can be held liable under any theory of liability under § 1983.  To state a claim under § 1983, a plaintiff must show that "defendants, acting under the color of state law, deprived him of a right secured by the Constitution or the laws of the United States."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 907 (3d Cir. 1997).  There are multiple theories of liability under § 1983, including "special relationship," "state-created danger," and the municipal liability theory arising from the United States Supreme Court decision in Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978).

Here, Plaintiff is proceeding under the state-created danger and municipal liability theories. As noted, in its Motion, the School District argues Plaintiff's § 1983 claim (Count One) should be

dismissed as both untimely and because Plaintiff has failed to state a § 1983 claim under either theory of liability.  (See Doc. No. 4.)  The Court will discuss each argument in turn.

### 1.    Plaintiff's § 1983 Claim is Not Time Barred

Plaintiff's § 1983 claim (Count One) is not time barred because the SAC "relates back" to the original pleading under Federal Rule of Civil Procedure 15(c).  Section 1983 lacks a statute of limitations of its own and instead uses the statute of limitations for state personal injury torts. Ngyuen v. Pa., 906 F.3d 271, 273 (3d Cir. 2018).  In Pennsylvania, the statute of limitations for a personal injury tort is two (2) years.  42 PA. CONS. STAT. § 5524.  Federal law, however, governs a cause of action's accrual date.  Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991). "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'"  Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (internal citation omitted).

Here, the § 1983 cause of action accrued on February 1, 2023, when Plaintiff alleges he was attacked.  On January 20, 2025, Plaintiff filed the original Complaint against Defendants, but did not raise the § 1983 claim until he filed the SAC on April 25, 2025, over two (2) months after the statute of limitations had lapsed.  As a result, Defendants argue the § 1983 claim is time barred under the statute of limitations, but Plaintiff submits that the SAC was timely filed because it relates back to the date of the filing of the original Complaint under Federal Rule of Civil Procedure 15(c).  (Doc. No. 4 at 6; Doc. No. 5 at 4.)

Under Rule 15(c), "an amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the same conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  The United States Supreme Court has held that relation back under Rule 15(c) "depends on the existence of a common 'core of operative facts' uniting the original and newly

asserted claims." Mayle v. Felix, 545 U.S. 644, 659 (2005). Such a common core of operative facts exists when "the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds." Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004). "Thus, amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c)." Id.

In this case, a comparison between Plaintiff's original Complaint and in the SAC shows that the amendments amplified the factual circumstances surrounding the alleged assault. In the original Complaint, Plaintiff claimed the School District, through their employees and staff, "were aware of the violent tendencies of certain students" and knew that the location of the assault was a safety concern, but nevertheless failed to take appropriate action to provide security or implement safety measures to protect Plaintiff. (Doc. No. 3 at 7 ¶¶ 5-6.) In the SAC, Plaintiff alleges that the School District's actions constitute deliberate indifference to Plaintiff's Fourteenth Amendment right to bodily integrity because it was aware of the violent tendencies of the students who assaulted Plaintiff, the safety risks that the area in question posed, the foreseeable risk of harm to Plaintiff as a teacher who frequented the area where the assault took place, and willfully chose not to act to address these known safety risks. (Doc. No. 1 at ¶¶ 14-27.)

Based on the similarities between the allegations in the original Complaint and the SAC, the School District "had fair notice of the general fact situation and legal theory upon which the amending party proceeds." Bensel, 387 F.3d at 310. Therefore, because the SAC "merely expounds upon and further details the factual scenario and . . . claims that were roughly sketched in its original Complaint," the amendment adding the § 1983 claim relates back under Rule 15(c) to the date the original Complaint was filed. Id. As such, because the original Complaint was filed

within the two-year statute of limitations required for Section 1983 claims, this claim (Count One) is timely.

### 2.    Plaintiff's § 1983 Claim Fails Under the "State-Created Danger" Exception

While Plaintiff's § 1983 claim is timely, it fails under the "state-created danger" theory of liability because the SAC fails to plead an affirmative act by the School District that created the danger or increased Plaintiff's vulnerability.  The Third Circuit has recognized that liability under the "state-created danger" exception may arise when state authority injures a citizen or renders him "more vulnerable to injury from another source than he or she would have been in the absence of state intervention."  Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006) (quoting Schieber v. City of Phila., 320 F.3d 409, 416 (3d Cir. 2003)).

To state a claim under the "state-created danger" theory of liability, a plaintiff must allege that:

1)  the harm ultimately caused was foreseeable and fairly direct;

2)  a state actor acted with a degree of culpability that shocks the conscience;

3)  a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4)  a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Id. (internal citations and quotations omitted).  Failure to state any of the four elements defeats a "state-created danger" claim.  Gayemen v. Sch. Dist. of Allentown, No. 14-CV-1518, 2016 WL 3014896, at *5 (E.D. Pa. 2016) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 914 (3d Cir. 1997)).

The fourth element is typically the most contested, as it is difficult to draw a line between an affirmative act and a failure to act. L.R. v. Sch. Dist. of Phila., 836 F.3d 235, 242 (3d Cir. 2016). The Third Circuit has stressed "that under the fourth element of a state-created danger claim, 'liability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." Bright, 443 F.3d at 282 (quoting D.R. by L.R. v. Middle Bucks Area Vo. Tech. Sch., 972 F.2d 1364, 1374 (3d Cir. 1992)) (emphasis in original). Furthermore, the court clarified that "it is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Id.

Here, because Plaintiff does not allege an affirmative act by the School District, nor can he under the facts alleged in the SAC, he fails to state a Section 1983 claim under the state-created danger theory. Plaintiff argues he alleged two affirmative acts by the School District that created a danger or made Plaintiff more vulnerable than if they had not acted at all. First, Plaintiff contends he alleged an affirmative act through the allegation that Defendants "designed, constructed and/or maintained [the annex] improperly, by constructing an area that was obviously unreasonably dangerous, provided no video surveillance . . . allowing students to be completely unsupervised in the exact area where the assaults occurred." (Doc. No. 1 at ¶ 10.) Second, Plaintiff submits that he alleged an affirmative act by alleging that, despite its knowledge of the violent tendencies of certain students and the safety deficiencies of the area of the school where the attack occurred, the School District failed to provide any supervision, security, or timely and/or properly construct and activate video surveillance in the annex. (Id. at ¶¶ 10-24.) But neither of these allegations support the finding of an affirmative act.

Plaintiff's first argument that the improper design, construction, and maintenance of a school space supports the finding of an affirmative act as required by a "state-created danger"

claim has previously been rejected by the Third Circuit.  For example, in D.R., two female plaintiffs alleged that they were regularly verbally and sexually molested in their graphic arts classroom by several male students over the course of the school year.  D.R., 972 F.2d at 1366. The alleged assaults took place primarily in the classroom's unisex bathroom and photography darkroom.  Id.

Because of these assaults, the plaintiffs brought § 1983 claims against the school and school district, in part under the "state-created danger" theory, alleging that the state created or increased the plaintiffs' danger by the manner in which the school constructed the graphic arts classroom. Id. at 1375.  The Third Circuit rejected this contention, stating "we do not believe . . . that the state can be said to have created or increased [the] plaintiffs' risk of danger by constructing and maintaining the graphic arts classroom with its particular physical layout."  Id.  The court reasoned that the alleged assaults could have occurred even if the sexes had separate bathrooms, and that the existence of a darkroom and a unisex bathroom in the classroom "did not subject plaintiffs to an inherently dangerous environment."  Id.

In this case, similar to D.R., the School District's construction and maintenance of the bathroom and annex where Plaintiff was attacked is not an affirmative act as required to state a § 1983 claim under the state-created danger theory of liability.  Like the acts committed against the plaintiffs in D.R., the attack against Plaintiff in the instant case could have still occurred had the bathroom and annex where he was attacked been constructed in a different manner.  See id. at 1375.  Moreover, the mere existence of a bathroom in the newly constructed annex of the school "did not subject [Plaintiff] to an inherently dangerous environment" that would support imposing liability against the School District under the state-created danger exception.  Id.  Therefore, Plaintiff's allegations regarding the construction and maintenance of the annex do not amount to

an affirmative act by the School District to support the imposition of liability against it under the state-created danger theory of liability.

Plaintiff's second contention that the School District acted affirmatively by failing to provide supervision, security or video surveillance in the school's newly constructed annex despite their knowledge of safety concerns in the area also has been rejected by courts in the Third Circuit. Specifically, courts have "repeatedly rejected state-created danger claims brought against public school districts for violence committed against [persons in schools], <u>even</u> where school officials were alleged to have known of the dangerous conditions within the school that ultimately resulted in injury to the plaintiff, on the grounds that the school did not affirmatively create the danger." <u>Green v. Chester Upland Sch. Dist.</u>, 89 F. Supp. 3d 628, 690-91 (E.D. Pa 2015) (rejecting the plaintiff's state-created danger claim on the ground that the school defendants' failure to implement an identification system despite knowledge of higher instances of trespassers at the school was a failure to act rather than an affirmative act) (emphasis in original).

In <u>Morrow v. Balaski</u>, two sisters were subjected to a series of threats and physical assaults by a student bully.  719 F.3d 160, 164 (3d Cir. 2013).  The incidents included online threats, an attack in the lunchroom, an attempt to throw one of the sisters down a set of stairs, and an elbow to the throat to one of the sisters.  <u>Id.</u>  The sisters and their parents reported these incidents not only to the school district, but also to local police, resulting in the student bully receiving both a school suspension and a "no-contact" order from the Juvenile Division of the Court of Common Pleas of Beaver County, Pennsylvania.  <u>Id.</u>  Despite the "no-contact" order and the school's knowledge of the incidents, the attacks and threats continued.  <u>Id.</u>  Meeting again with the parents, the school district advised them to consider removing their children from the school rather than the school district removing the student bully.  <u>Id.</u> at 164-65.

13

In response, the parents filed a lawsuit against the school district, asserting violations of their daughters' Fourteenth Amendment substantive due process rights under § 1983 and alleging in part that the school district's actions in allowing the student bully to return to the school created a dangerous situation for their daughters. Id. at 165. Affirming the district court's decision to grant the school district's motion to dismiss, the Third Circuit stated it was not persuaded by the plaintiff's argument that the school district had acted affirmatively by allowing the student bully to return to school after her suspension or acted affirmatively by failing to prevent the bully from boarding the sisters' bus despite knowledge of the "no-contact" order. Id. at 178. The Third Circuit reasoned that the plaintiff's complaint "attempts to morph passive inaction into affirmative acts," and that "merely restating the [school district's] inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct." Id. at 179.

Similarly, in Brown, the plaintiff, a high school student with "mild mental retardation," and her mother met with a teacher and principal at the school to discuss an incident where the plaintiff had been assaulted by a student after she refused to meet him in the library for oral sex. 456 F. App'x 88, 90 (3d Cir. 2011). During this meeting, the plaintiff and her mother were promised that the plaintiff would be provided with one-on-one adult supervision. Id. Despite this promise, the plaintiff was sexually assaulted two weeks later by other students in the auditorium. Id. at 89. As a result, the plaintiff filed suit against the school district, alleging a § 1983 claim under the "state-created danger" theory of liability. Id. at 90. The Third Circuit affirmed the district court's decision granting the school district's motion for summary judgment, concluding that the plaintiff had failed to establish that the school district had affirmatively acted to create the danger to the plaintiff by failing to follow through on their promise to provide one-on-one supervision and by failing to appropriately punish violent students. Id. at 91. Instead, the court concluded that "the [s]chool

14

[d]istrict did not 'act' at all," and the "[d]istrict's lack of affirmative action is . . . fatal to [the plaintiff's] § 1983 claim." Id. at 92.

Here, Plaintiff's affirmative action allegations are comparable to those in Morrow and Brown. Much like the school's failure in Morrow to prevent a bully from returning to school after a suspension and allowing the bully to board the victim's bus, the School District's failure to provide supervision, security, or video surveillance in the newly constructed annex demonstrates passive inaction rather than affirmative action. See Morrow, 719 F.3d at 179; (Doc. No. 1 ¶¶ 10-24.) Moreover, similar to the school's failure in Brown to provide adequate supervision over the plaintiff and failure to discipline the students who allegedly sexually assaulted the plaintiff, the School District's failure in this case to provide security and/or supervision in the annex is not indicative of an affirmative act, but rather, as in Brown, the "school did not 'act' at all." See Brown, 456 F. App'x at 92.

Ultimately, Plaintiff's allegations fail to establish affirmative acts, and instead only highlight the School District's failure to act. Similar efforts to allege an affirmative act have been rejected by courts in this circuit because "merely restating the [d]efendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct." Morrow, 719 F.3d at 179. Therefore, Plaintiff's efforts in his second theory to recharacterize the School District's failure to provide supervision, security, or video surveillance in the new annex as affirmative action also fails to meet the requirements of the fourth element of the "state-created danger" exception.

### 3.    Plaintiff's § 1983 Claim Fails Under All Monell Theories of Liability

In addition, Plaintiff's § 1983 claim fails under all Monell theories of liability because (1) the SAC does not allege that Plaintiff's constitutional rights were violated, and (2) it fails to sufficiently plead a policy, custom, or deliberate indifference to a violation of Plaintiff's rights. In

Monell, the United States Supreme Court held that municipal entities can be subject to Section 1983 liability in limited circumstances.  See Monell, 436 U.S. at 690.  The gravamen of Monell and its progeny is that "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' – that is, acts which the municipality has officially sanctioned or ordered."  Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).  In other words, the constitutional deprivation must have had its origin in the policy or custom of the municipality, and liability based on the actions of city officials exists only where it can be shown that the officials acted in accordance with that policy or custom.  Monell, 436 U.S. at 694.

Thus, under Monell, to state a Section 1983 claim against a municipality, a plaintiff must establish that (1) a constitutionally protected right has been violated by a state actor, and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference to a violation of a constitutional right.  Monell, 436 U.S. at 694-95, 98; see also Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990).  But allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a claim against the municipality.  See, e.g., Szerensci v. Shimshock, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under Monell.")

Here, Plaintiff contends that the School District is liable under Monell because Plaintiff's "injuries resulted from the [School] District['s] deliberate policies, customs, and failures to act, which constitute actionable municipal conduct under controlling precedent."  (Doc. No. 5 at 8.) But in the Motion to Dismiss the SAC, the School District submits that Plaintiff has failed to allege an underlying constitutional violation to support a Monell claim, and that Plaintiff has failed to

plead facts sufficient to establish that a policy, custom, or deliberate indifference to a constitutional right caused Plaintiff's injuries. (Doc. No. 4 at 10-11; Doc. No. 6 at 3-5.) The Court agrees.

### a.    Plaintiff Fails to Establish the First Element of <u>Monell</u>

To begin, Plaintiff has failed to allege that a constitutionally protected right has been violated by the School District. The SAC claims that Plaintiff's right to bodily integrity under the Due Process Clause of the Fourteenth Amendment was violated when he was assaulted by students. (Doc. No. 1 ¶ 16.) But the United States Supreme Court has made clear that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." <u>DeShaney</u>, 489 U.S. at 197. Moreover, the Third Circuit has upheld "the principle that municipal liability will only lie where municipal action actually caused an injury." <u>Grazier v. City of Phila.</u>, 328 F.3d 120, 124 (3d Cir. 2003) (citation omitted).

Here, because Plaintiff's alleged assault was at the hands of private actors, namely students at the Ethan Allen School, Defendants' actions, or lack thereof, were not the cause of Plaintiff's injuries and do not constitute a violation of the Due Process Clause of the Fourteenth Amendment. Therefore, Plaintiff has failed to establish that the School District violated his constitutional rights under the Fourteenth Amendment, as required to state a Section 1983 claim under <u>Monell</u>.

### b.    Plaintiff Fails to Establish that a Municipal Policy Caused the Alleged Violation of His Constitutional Right

Even if Plaintiff had alleged that the School District violated his Fourteenth Amendment right to bodily integrity, he nevertheless fails to adequately plead that this violation resulted from a municipal policy. To demonstrate a municipal policy, a plaintiff must cite to an official policy. <u>Monell</u>, 436 U.S. at 690 (holding that a municipality may be sued under Section 1983 when it "implements or executes a policy statement, ordinance, regulation, or decisions officially adopted and promulgated by that body's officers"). The Third Circuit has explained that a policy is made

when a decisionmaker with final authority to establish a municipal policy issues an official proclamation, policy, or edict. <u>Wright v. City of Phila.</u>, 685 F. App'x 142, 146 (3d Cir. 2017) (citing <u>Andrews</u>, 895 F.2d at 1480). "Locating a policy ensures that a municipality is held liable only for those deprivations resulting from decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 403 (1997). Alternatively, a policy "need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purpose of § 1983." <u>Porter v. City of Phila.</u>, 975 F.3d 374, 383 (3d Cir. 2020).

Here, Plaintiff fails to cite to an official Philadelphia School District policy that supports liability under <u>Monell</u>. Plaintiff's counsel argued at the July 14, 2025 hearing on the Motion that Plaintiff alleged a policy as required by <u>Monell</u> in the following paragraphs of the SAC:

33. The negligence and/or carelessness of defendants consisted of the following:

*** 

m. Failing to establish safe and/or reasonable policies and/or procedures for the Ethan Allen School to provide a safe working environment to Plaintiff;

*** 

o. Failing to properly supervise students who were known to have violent and/or problematic tendencies;

*** 

q. Failing to maintain adequate staffing in relation to staff—student ratio, per applicable state, federal and/or local standards;

r. Failing to provide and maintain adequate staffing and/or security in the heavy traffic areas, specifically where the incident occurred;

*** 

v. Failure to properly and/or appropriately design the bathroom area where the incident in question occurred, as [] Defendant was on notice of the problematic

18

and/or unsafe design of same, but nevertheless did not properly modify the design . . .

\*\*\*

(Doc. No. 1 at ¶¶ 33(m), (o), (q), (r), (v).)  But none of these allegations cite to an official policy of the Philadelphia School District.  Instead, they merely point to a lack of policy and restate the same allegations regarding Defendant's failure to act discussed above.  Therefore, Plaintiff has failed to allege that a municipal policy caused the attack.  See Witt v. City of Vineland, No. CV2014678RMBKMW, 2021 WL 3465597, at *6 (D.N.J. Aug. 6, 2021) (finding no Monell claim where the plaintiff did not allege when policies were adopted, by whom, or any content of the alleged formal policies).

### c. Plaintiff Fails to Establish a Custom Creating Monell Liability Under § 1983

Furthermore, the SAC fails to allege a municipal custom under Monell.  "[A]n act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  Bd. of Cnty. Comm'rs of Bryan Cnty., Okl., 520 U.S. at 404 (internal citations omitted).  A plaintiff can establish a custom by conducting a statistical analysis of lawsuits against a municipality for a violation of a particular constitutional right.  See Simpson v. Ferry, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016) (permitting a Monell claim to proceed following a review of the plaintiff's statistical analysis about the number of lawsuits brought against the Philadelphia Police Department for use of excessive force).  Additionally, "[a] course of conduct 'so permanent and well settled as to constitute a custom or usage with the force of law' may constitute an official custom."  Stringer v. Cnty. of Bucks, No. CV 22-1525, 2023 WL 2163871, at 6* (E.D. Pa. Feb. 22, 2023) (citing Monell, 436 U.S. at 691).

Here, the SAC fails to plead a pattern of conduct that amounts to an official custom under Monell. At the July 14, 2025 hearing, Plaintiff's counsel contended that custom is pled through allegations of prior issues with student behavior in the newly constructed annex and the school's failure to address them. However, the SAC merely alleges that Defendants "were on notice of the violent tendencies of the students who assaulted plaintiff" and "on notice of the safety risks and concerns that the area in question posed," yet failed to take any reasonable actions to address the risks and provide a safe work environment. (Doc. No. 1 ¶¶ 21-22.) But these allegations do not detail prior issues with student behavior in the newly constructed annex, as Plaintiff's counsel argued. Rather, they merely allege that Defendants were on notice of such issues without explaining what put Defendants on notice, which, in any event, is not enough for the Court to infer that Defendants had a custom of permitting assaults to occur in the newly constructed annex through a long-standing pattern of ignoring violent tendencies of students. See, e.g., Niblack v. Murray, No. CIV.A. 12-69190 MAS, 2013 WL 4432081, at *8 (D.N.J. Aug. 14, 2013) (finding the plaintiff failed to "support his naked assertion of an unlawful municipal policy or custom" when "he cite[d] no prior incident or incidents to support the bald allegation of 'widespread abuse'"); O'Hara v. Cnty. of Allegheny, No. 12-818, 2013 WL 501374, at *4 (W.D. Pa. Feb. 8, 2013) ("[The] [p]laintiff contends that amending his Complaint to include the phraseology that [the defendant's] policy or custom violated [the] [p]laintiff's constitutional rights, unadorned with supporting facts, cures any defect under Federal Rule of Civil Procedure 12(b)(6). This Court finds that it does not. The sole allegation of [the defendant's] conduct is that it did not provide [the] [p]laintiff with a hearing after it detained him due to the issuance of a bench warrant for his arrest. Most importantly, [the] [p]laintiff does not state how this solitary incident establishes a custom, policy or practice of [the defendant] that violates his constitutional right . . . ."); but see Simpson, 202 F. Supp. At 452

(finding the plaintiff pled sufficient evidence of repeated misconduct, including over one thousand lawsuits brought against the City of Philadelphia, combined with the plaintiff's additional allegations of personal bias against him).

Thus, because the SAC fails to allege "[a] course of conduct 'so permanent and well settled as to constitute a custom or usage with the force of law,'" Plaintiff has failed to establish an official custom. Stringer, 2023 WL 2163871, at *6 (citing Monell, 436 U.S. at 691).

### d.    Plaintiff Fails to Identify a Policymaker

Additionally, Plaintiff fails to identify a policymaker. "It is clear under either route [policy or custom] that a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Watson v. Abington Twp., 478 F.3d 144, 156 (3d Cir. 2007) (internal citations omitted). A plaintiff must "allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." Chavariaga v. New Jersey Dep't of Corr., 806 F.3d 210, 223 (3d Cir. 2015). And the policymaker in question must possess the authority to make a final policy. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). Absent identification of such a "decisionmaker possess[ing] final authority to establish municipal policy," a plaintiff cannot establish as a matter of law that a municipality should be subject to liability under Section 1983. Andrews, 895 F.2d at 1480.

Here, the SAC fails to identify a policymaker sufficient to establish § 1983 liability. "The final policy maker for a school district in Pennsylvania is typically the school board or the superintendent." E.N. v. Susquehanna Twp. Sch. Dist., No. 1:09-CV-1727, 2011 WL 3608544 at *8 (M.D. Pa. July 5, 2011). But Plaintiff fails to allege any conduct or knowledge on behalf of the school board or superintendent of the School District. Instead, the SAC alleges only that "Defendants, through employees/staff members, were aware of the violent tendencies of certain

students," and "[t]he location of the incident in question . . . was a known safety concern to the principal, administration, teachers and/or staff." (Doc. No. 1 at ¶¶ 5,6.) But the School District's employees, including the principal, are not policymakers under <u>Monell</u>. <u>See</u> <u>Flood v. Sherk</u>, 400 F. Supp. 3d 295, 311 (W.D. Pa. 2019) (finding that a principal is not a final policymaker, and his alleged departures from the school district's sexual harassment policies were not attributable to the school district). Therefore, Plaintiff fails to identify a policymaker with sufficient authority to impose <u>Monell</u> liability upon the School District.

### e.    Plaintiff Fails to Allege the School District Was Deliberately Indifferent

In addition, Plaintiff seeks to assert <u>Monell</u> liability by claiming the School District was deliberately indifferent to the alleged violation of his constitutional rights. When the alleged "custom at issue is a failure to train or supervise, the plaintiff must show that this failure 'amounts to deliberate indifference to the rights of persons with whom [the municipality's] employees will come into contact.'" <u>Johnson v. City of Phila.</u>, 975 F.3d 394, 403 (3d Cir. 2020) (internal quotations omitted). A plaintiff must also identify a specific deficiency, not "simply general laxness or ineffectiveness of training." <u>Niblack</u>, 2013 WL 4432081, at *8. "There must also be some affirmative link between the alleged inadequacies of the training and the constitutional violation at issue." <u>Id.</u> And although "a pattern of similar constitutional violations by untrained employees is ordinarily necessary" to make out a failure to train claim under <u>Monell</u>, the United States Supreme Court explained the scope of liability as follows:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can be reasonably said to have been deliberately indifferent to the need.

<u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989).

Therefore, in order for a municipality's failure to train to amount to deliberate indifference, a plaintiff must show that: (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. Ancherani v. City of Scranton, No. 3:13-cv-02595, 2015 WL 5924366, at *4 (M.D. Pa. Oct. 9, 2015) (citing Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999)).

Here, even assuming arguendo that Plaintiff has plausibly pled prongs one and three of the failure to train test denoted above, the SAC fails to satisfy prong two requiring the plaintiff to show that "the situation involves a difficult choice or a history of employees mishandling." Id. Regarding the second prong, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference." Connick v. Thompson, 563 U.S. 51, 62 (2011) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. at 409). The SAC, however, fails to allege a pattern of constitutional violations similar to the violation alleged by Plaintiff. Instead, it merely alleges that "[t]he risk of an altercation and/or assault in the area in question was a known risk that Defendant[s] failed to address," and that "Defendants showed deliberate indifference, as they had time to address these known safety risks, but willfully chose not to act." (Doc. No. 1 at ¶¶ 24-25.) But without pleading any factual support to demonstrate a pattern of similar altercations and/or assaults in the newly constructed annex where Plaintiff alleges he was attacked, the SAC simply asserts conclusory allegations that the School District was aware of similar incidents and failed to address them. Consequently, because the SAC fails to allege a pattern of similar constitutional violations and thus fails to satisfy the second prong of the deliberate indifference test, Plaintiff has not alleged a claim under the deliberate indifference theory of Monell liability.

23

**f.    Plaintiff Fails to Plead a Claim Alleging Liability Under the Single Violation Theory**

Finally, the SAC fails to allege <u>Monell</u> liability under the single violation theory because the School District lacked contemporaneous knowledge and cannot be said to have approved of the alleged assault.  The test formulated by the Third Circuit for municipal liability under the single violation theory requires a plaintiff to show:  (1) contemporaneous knowledge of the offending incident, and (2) circumstances where the supervisor's actions or inaction could be found to have communicated a message of approval to the offender.  <u>Montgomery v. De Simone</u>, 159 F.3d 120, 127 (3d Cir. 1998) (internal citations omitted).

Here, the SAC does not allege that the School District had contemporaneous knowledge of the alleged assault, but instead alleges the school failed to "properly and/or timely provide security and/or assistance to the Plaintiff while he was being assaulted."  (Doc. No. 1 ¶ 33(e).)  Moreover, the SAC fails to allege that the School Districts' action or inaction communicated a message of approval to the students that allegedly assaulted Plaintiff.  Rather, it alludes to the efforts of a district employee "failing to properly secure one of the students during the assault, whereby the student assaulted the Plaintiff a second and/or third time."  (<u>Id.</u> at ¶ 33(j).)  But far from communicating a message of approval to the attacking students, the employee's efforts to break up the alleged assault on Plaintiff demonstrates disapproval of the students' conduct.  Furthermore, the School District's student code of conduct expressly prohibits violence and assaults on school grounds, reaffirming Defendants' disapproval of the students' conduct.[1]  (Doc. Nos. 6-1, 6-2.)

---

[1]    Because the Philadelphia School District's student code of conduct is a matter of public record, the Court may consider it in deciding the Motion to Dismiss the Second Amended Complaint. <u>See</u> <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.")

Therefore, because the SAC fails to allege that the School District had (1) contemporaneous knowledge of the offending incident and (2) their actions or inaction communicated approval to the student offenders, Plaintiff has failed to state a <u>Monell</u> claim under a single violation theory of liability.

All things considered, Plaintiff's SAC fails to allege a municipal policy, custom, or deliberate indifference to the violation of a constitutional right creating § 1983 liability under <u>Monell</u>.

### C. School District is Entitled to Immunity Against Plaintiff's Negligence and Gross Negligence and/or Recklessness Claims

Because Plaintiff's negligence and gross negligence claims in Counts Two and Three, respectively, arise under Pennsylvania law and the School District is generally immune from tort claims under the Pennsylvania Political Subdivision Tort Claims Act, the claims in Counts Two and Three also fail. The Pennsylvania Political Subdivision Tort Claims Act (the "Tort Claims Act") provides that, "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 PA. CONS. STAT. § 8541. There are exceptions to this grant of general immunity, such as the real estate exception in 42 Pa. Cons. Stat. § 8542 and the willful misconduct exception in § 8550. Here, Plaintiff avers that the School District is not entitled to immunity for the claims in Counts Two and Three because its negligent acts fall under the real property exception and the willful misconduct exception. (Doc. No. 5 at 11.) For the reasons that follow, these exceptions do not apply to the state law claims, and the School District is entitled to immunity under the Tort Claims Act.

### 1.    Real Property Exception Does Not Apply

Plaintiff's negligence (Count Two) and gross negligence and/or recklessness (Count Three) claims do not fall under the real property exception under 42 Pa. Cons. Stat. § 8542.  The real property exception imposes liability on a local agency for injuries resulting from "the care, custody, and control of real property in possession of the local agency."  42 PA. CONS. STAT. § 8542(b)(3).  However, courts have held that the exception "can be applied only to those cases where it is alleged the artificial condition or defect of the land <u>itself</u> causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability."  <u>Mascaro v. Youth Study Center</u>, 523 A.2d 1118, 1124 (Pa. 1987) (emphasis in original).  Moreover, the real estate exception "has consistently been held to be unavailable to those whose claim of negligence consists of a failure to supervise the conduct of students or persons adequately."  <u>Mascaro</u>, at 1123 (internal citations omitted).

Here, because Plaintiff's injuries were not caused by any defect in the real property itself and instead were caused by a group of alleged student attackers, the real property exception does not apply.  While Plaintiff alleges that the unsecured bathroom area where he was attacked "constitute[d] a dangerous condition of real property under [the School District's] control" because there were no security cameras activated or staff present to supervise the students, he does not, and cannot, allege that his injuries were caused by the real property itself.  Instead, Plaintiff alleges, at best, that the real property facilitated the student's attack because it occurred in an area in which the students had little-to-no supervision.  But "it would be a total distortion of the language of [the real property exception] to allow the supervision, or lack of supervision, of school children to fall within the scope of care, custody and control of real property."  <u>Messina v. Blairsville-Saltsburg Sch. Dist.</u>, 503 A.2d 89, 89 (Pa. Commw. Ct. 1986) (citing <u>Robson v. Penn Hills Sch. Dist.</u>, 437 A.2d 1273, 1275 (Pa. Commw. Ct. 1981)).  Therefore, because Plaintiff's injuries were not caused

by a defect in real property itself, the School District's immunity under the Tort Claims Act is not waived by the real estate exception.

### 2. Willful Misconduct Exception Does Not Apply

In addition, the willful misconduct exception under § 8550 of Pennsylvania's Political Subdivision Tort Claims Act (the "Tort Claims Act") does not apply. Under 42 Pa. Cons. Stat. § 8550:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted . . . willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 PA. CONS. STAT. § 8550 (emphasis added). The Pennsylvania Supreme Court has defined willful misconduct as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006) (citing Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (citations omitted)). In other words, "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" Id. (internal citations omitted).

Notably, § 8550 does not waive local agency immunity, but rather waives immunity for the employees or officials of a local agency whose willful misconduct caused the injury. More specifically, as seen above, it provides that where an employee of a local agency causes an injury through willful misconduct, "the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply." 42 PA. CONS. STAT. § 8550. But sections 8545, 8546, 8548, and 8549 of the Political Subdivision Tort Claims Act each concern immunity for employees when a lawsuit is brought against an employee or official of a local agency. See 42

PA. CONS. STAT. §§ 8545, 8546, 8548, 8549.  Conversely, immunity for local agencies is provided

for in § 8541 of the Tort Claims Act, which states:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 PA. CONS. STAT. § 8541.  Therefore, based on the plain language of the statute, the willful

misconduct exception under § 8550 does not waive the immunity of local agencies provided for in

§ 8541 of the Tort Claims Act.

Moreover, Pennsylvania courts have held that a local agency may not be held liable under

§ 8550 for the willful misconduct of its employees:

> It is well-settled that where a plaintiff has averred willful misconduct on the part of local agency employees, section 8542(a)(2) of the Tort Claims Act, 42 Pa.C.S. § 8542(a)(2), bars recovery from the local agency because liability may be imposed on a local agency only for negligent acts. In addition, section 8550 of the Tort Claims Act, 42 Pa.C.S. § 8550, does not create an exception to section 8542(a)(2), and, as a result, a local agency may not be held liable for the willful misconduct of its employees. In order to overcome the defense of governmental immunity, a plaintiff's claims against a local agency must sound in negligence and must fall within one of the eight enumerated exceptions to local agency immunity set forth in section 8542(b) of the Tort Claims Act, 42 Pa.C.S. § 8542(b).

Orange Stones Co. v. City of Reading, 87 A.3d 1014, 1022 (Pa. Commw. Ct. 2014) (internal

citations omitted).

Here, the willful misconduct exception does not apply.  First, because the School District

is a local agency, the willful misconduct exception does not waive its immunity under the Torts

Claim Act.  As noted above, the School District is entitled to immunity under § 8541 of the Tort

Claims Act.  The willful misconduct exception in § 8550 of the Tort Claims Act, however, only

applies to sections 8545, 8546, 8548, and 8549 of the Act, which concern immunity for employees

when a lawsuit is brought against an employee or official of a local agency.

And second, Plaintiff's allegations fail to demonstrate that the actions of School District employees constituted willful misconduct.  Plaintiff contends that Defendants exhibited willful misconduct by "consciously disregard[ing] the substantial risk of harm to persons using the annex."  (Doc. No. 5 at 11.)  However, the SAC fails to allege that, by failing to provide supervision, security, or video surveillance in the newly constructed annex where the attack occurred, the School District desired to bring about an attack in the annex or that it was substantially certain that the attack would occur.  Rather, the allegations in the SAC sound in negligence and/or recklessness, which lack the culpability required to overcome immunity under the Tort Claims Act through the willful misconduct exception.  (See, e.g., Doc. No. 1 at ¶ 34 (alleging that "[a]s a direct result of the negligent and/or careless conduct of defendants, which was foreseeable, the Plaintiff suffered various serious and permanent injuries"); id. at ¶ 40 (arguing that "[a]s a direct result of the reckless and/or gross negligent conduct of defendants, which were foreseeable, the Plaintiff suffered various serious and permanent personal injuries").)

Accordingly, because the willful misconduct exception in § 8550 also is inapplicable in the present case, Plaintiff's claim does not meet any of the exceptions to the Tort Claims Act.

**D.    Plaintiff's Request for Leave to Amend the Second Amended Complaint Will Be Denied**

Finally, in the Response, Plaintiffs requested leave to amend the SAC in the event the Court dismisses any of their claims.  (See Doc. No. 5 at 12-13.)  "After amending once or after an answer has been filed, [a party] may amend only with leave of court or the written consent of the opposing party, but 'leave shall be freely given when justice so requires.'"  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (quoting Fed. R. Civ. P. 15(a)).  Whether to grant or deny leave to amend is within the discretion of the District Court.  Id.  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."  In re Burlington

<u>Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997).  In this case, because the Court is dismissing all claims alleged in the SAC, whether Plaintiffs should be granted leave to amend these claims becomes ripe for analysis.

### 1.    Amendment of Plaintiff's § 1983 Claim (Count One) Would be Futile

Plaintiff's request for leave to amend his § 1983 claim would be futile under both the state-created danger and <u>Monell</u> theories of liability.  First, it would be futile to amend under the state-created danger theory of liability because Plaintiff has not plausibly alleged, nor could he, that a state actor affirmatively acted to create a danger to him or to make him more vulnerable as a victim. As discussed above, Plaintiff alleges that the School District acted affirmatively by (1) "constructing an area [<u>i.e.</u>, the annex] that was unreasonably dangerous" and (2) failing to provide supervision, security, or video surveillance in the annex despite knowledge of safety concerns and violent tendencies of the students.  (Doc. No. 1 at ¶¶ 10-24.)  But regarding Plaintiff's first argument that the School District acted affirmatively by constructing an unreasonably dangerous area, an amended complaint will not be able to allege that constructing the layout of the annex is an affirmative act sufficient to allege a state-created danger claim.  <u>See</u> <u>D.R.</u>, 972 F.2d at 1375 (holding that the state could not be said to have acted affirmatively by constructing a classroom with its particular physical layout).

Additionally, regarding Plaintiff's second argument that the School District acted affirmatively by failing to provide supervision, security, or surveillance despite their knowledge of safety concerns, these allegations, as the Court noted above, merely amount to the School District's failure to act or inaction, which are not affirmative actions.  <u>Morrow</u>, 719 F.3d at 179 ("[M]erely restating the [d]efendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct.")  Accordingly, because Plaintiff cannot allege an

affirmative act attributable to the School District, it would be futile to grant Plaintiff leave to amend his § 1983 claim under the state-created danger theory of liability.

Second, it would be futile to amend under the Monell theory of liability because Plaintiff has not plausibly alleged, nor could he, that he was injured by a state actor. As noted above, to succeed under Monell, a plaintiff must establish that (1) a constitutionally protected right has been violated by a state actor, and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference to a violation of a constitutional right. Monell, 436 U.S. at 694-95, 98; see also Andrews, 895 F.2d at 1480. In an effort to satisfy the first prong of Monell, the SAC alleges that the School District violated Plaintiff's right to bodily integrity under the Fourteenth Amendment. But the Court has concluded, supra, that the School District did not violate Plaintiff's constitutional rights because it was not the actor who allegedly attacked Plaintiff. Instead, Plaintiff alleges he was attacked by private actors, namely students at the Ethan Allen School. And the United States Supreme Court has made clear that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney, 489 U.S. at 197.

Therefore, because Plaintiff will not be able to plausibly allege that there is an underlying constitutionally protected right violated by a state actor, leave to amend the § 1983 claim under any Monell theory of municipal liability would be futile.

### 2. Amendment of Plaintiff's Negligence and Gross Negligence and/or Recklessness Claims Would Be Futile

Finally, leave to amend the SAC for Plaintiff's Count Two and Count Three state tort claims would be futile because the School District has immunity from these claims under the Political Subdivision Tort Claims Act, and Plaintiff cannot plausibly allege that the real estate exception or willful misconduct exception apply. As discussed above, Plaintiff alleges that the real estate

exception to the Tort Claims Act applies because the School District failed to provide any supervision, security, or video surveillance in the annex where Plaintiff was attacked, which helped facilitate the students' allege attack on Plaintiff.  But this approach to the Tort Claims Act has consistently been rejected by courts interpreting the real estate exception to immunity.  <u>See</u> <u>Mascaro</u>, 523 A.2d at 1124 (holding that the real estate exception "can be applied only to those cases where it is alleged the artificial condition or defect of the land <u>itself</u> causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability"); (Doc. No. 1 at ¶¶ 11-12.)  Because Plaintiff was injured by the alleged student attackers, leave to amend would be futile because he cannot plausibly allege that his injuries resulted from a defect in the newly constructed annex itself.

Additionally, Plaintiff also cannot allege that the School District's immunity is waived under the willful misconduct exception because the willful misconduct exception does not waive the School District's immunity provided for in § 8541 of the Tort Claims Act, but rather waives the immunity of employees or officials of local agencies provided for in sections 8545, 8546, 8548, and 8549 of the Tort Claims Act.  Therefore, because Plaintiff cannot overcome the School District's immunity under the Political Subdivision Tort Claims Act, leave to amend the SAC will also prove futile to Counts Two and Three.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Second Amended Complaint (Doc. No. 4) will be granted and Plaintiff's request for leave to amend the Second Amended Complaint (Doc. No. 5 at 12) will be denied.  An appropriate Order follows.